**ROYALTY et al. v. STRANGE.   (No. 7788.)**

(Court of Civil Appeals of Texas. Galveston. Feb. 10, 1920. Rehearing Denied Feb. 26, 1920.)

**1. Trial ⬤⟿295(12)—Instruction defining nuisance not error, when considering charge as a whole.**

In an action to enjoin the maintenance and operation of a hog ranch on the tract adjoining plaintiff's land, and for damages, an instruction defining nuisance as "anything that works hurt, inconvenience, or damage to another, either in his person or in his property," in place of a fuller and correct requested instruction, *held* not prejudicial error, when considering charge as a whole.

**2. Trial ⬤⟿296(1)—Faulty instructions, rendered harmless by others, do not require reversal.**

Erroneous parts of court's charge, complained of, which were rendered harmless by the giving of special charges requested by defendants, appellants, do not require reversal.

**3. Evidence ⬤⟿13 — Nuisance ⬤⟿4 — Judicial notice is taken of injury to neighbors from raising hogs, but trifling damages create no liability.**

The courts will take judicial notice of the fact that in inhabited districts some injury must result to neighbors from the raising and slaughtering of hogs, but this fact alone will not make the raiser and slaughterer liable for trifling damages caused thereby.

**4. Trial ⬤⟿260(6)—Requested charge on unreasonable use of adjoining land for hog ranch covered by charge given.**

In an action to restrain and for damages for using adjoining land for raising and slaughtering hogs, an instruction that the jury must look to "the facts and circumstances in evidence to determine whether the manner" of operation by defendants was such an "unreasonable use" as to cause injury and discomfort to plaintiff or his family, together with defendant's similar requested charge given, *held* to substantially cover a refused charge on the reasonableness of use of such premises.

**5. Trial ⬤⟿296(12)—Instruction on nuisance and unreasonable use of adjoining land for hog ranch not erroneous, in view of other instructions.**

In a suit to restrain defendant from operating a hog ranch on adjoining land and for damages, an instruction on the word "unreasonable," as applied to use of such ranch, and an instruction on "nuisance," *held*, in view of other instructions, not such as to mislead the jury to believe plaintiff entitled to recover if

the business was conducted in an unnecessary or unusual way, without the other elements of damage or injury to plaintiff.

**6. Trial ⬤⟿260(6)—Refused instruction as to nuisance held sufficiently covered by charges given.**

In an action to enjoin the operation of a hog ranch on land adjoining plaintiff's, refused instructions as to odors, noises, and incidents *held* sufficiently covered by others, so that defendant, appellant, was not injured.

**7. Nuisance ⬤⟿50(1)—Damages for annoyance to family recoverable.**

In an action to enjoin operation of a hog ranch near plaintiff's home and for damages, it was not error to submit a special issue permitting recovery for annoyance and discomfort to plaintiff and his family.

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Suit by W. T. Strange against George W. Royalty and others, composing the Gaffney Royalty Company. Judgment in part for plaintiff, and defendants appeal. Affirmed.

See, also, 204 S. W. 870.

Cooper & Merrill, of Houston, for appellants.

Atkinson & Atkinson, of Houston, for appellee.

LANE, J. At a former day of the present term of this court we rendered judgment in this cause, reversing the judgment of the trial court and remanding the cause for further proceedings. Upon further consideration of the cause we have reached the conclusion that we erred in reversing the judgment and remanding the cause, and upon our own motion we now set aside and vacate the former judgment of this court, and affirm the judgment of the trial court, for the reasons pointed out in the following opinion:

This suit was brought by appellee, W. T. Strange, against appellants George W. Royalty, George W. Cole, and Eli Gaffney, parties composing the firm of Gaffney Royalty Company, to restrain them from operating and conducting a hog ranch on a certain tract of land situated about eight miles west of the city of Houston, in Harris county, Tex., and near the home of appellee, consisting of 10 acres of land upon which his residence was situated, and for damages for depreciation in the value of his home, and for personal discomforts, inconvenience, and annoyance suffered by himself and family by reason thereof.

In his petition plaintiff, Strange, alleged that the hog ranch constituted a nuisance, on account of disagreeable odors arising therefrom, the noises made by the hogs, and the great number of flies produced thereby, to such an extent as to make him and his family sick, and to otherwise render his home un-

inhabitable, and that by reason thereof he was compelled to and did abandon his home, to his damage in the sum of $750; that he and his family, by reason of such nuisance, and especially his wife and children, were made sick, and by reason of the mental and physical anguish suffered by him and his wife and children, and by reason of the fact that he was compelled to abandon his home, he was damaged in the total sum of $5,000, for which he prayed judgment.

The defendants answered by general denial. They specially deny that any unusual stench or odors emanated from their hog ranch, and averred that the only smells emanating therefrom were the usual and ordinary smells and odors of hogs, and that such odors are not sufficient to cause any material physical discomforts to a person of ordinary sensibilities living at the home of plaintiff; that they were engaged in a lawful and useful business; that such business was conducted and carried on in a locality remote and sparsely settled, and suitable for the conduct of the same; and that said business was conducted in a lawful and proper manner, etc.

This is the second appeal of this case. The other appeal, however, concerned and related only to the effort of the plaintiff to have defendants' business abated as a nuisance. The opinion on that appeal is reported in 204 S. W. 870.

So much of the cause as is involved in this appeal was submitted to a jury upon the charge of the court, and such special charges, requested by defendants and given by the court, reading, in substance, as follows; the answers of the jury being set out under each question:

"You are instructed that a 'nuisance' is defined to be anything that works hurt, inconvenience, or damage to another, either in his person or his property. But in this connection you are further instructed that you will look to all the facts and circumstances in evidence to determine whether the manner in which the hog ranch was being operated by the defendants was such an 'unreasonable' use thereof as to cause injury, annoyance, or discomfort to the plaintiff or his family.

"By the term 'unreasonable' is meant something unnecessary and out of the usual and ordinary way of conducting or operating said business.

"Bearing in mind the foregoing instructions, you will answer the following special issues:

"Special Issue No. 1: Did or did not defendants' hog ranch, as conducted and operated by them, constitute a 'nuisance' (as said term has been defined herein) to plaintiff and his family, as alleged by him?" Answer: "It did."

"If you answer the foregoing special issue in the negative, you need not answer the succeeding one; but, if you answer the same in the affirmative, then state, in answer to

"Special Issue No. 2: Is said 'nuisance' a temporary or a permanent one?" Answer: "It is temporary."

"Special Issue No. 3: What was the reasonable market value, if any, of plaintiff's place

immediately before the establishment of said hog ranch?" Answer: "$90 per acre."

"Special Issue No. 4: What was the reasonable market value, if any, of plaintiff's place immediately after the establishment of said hog ranch?" Answer: "$75 per acre."

"Special Issue No. 5: Have plaintiff and his family suffered any inconvenience, discomfort or annoyance by reason of the operation of the hog ranch in question?" Answer: "They have."

"Special Issue No. 5A, requested by defendants: Does or does not the defendants' hog ranch, as now conducted and operated by them, constitute a nuisance (as said term is defined in the main charge of the court) to plaintiff and his family as alleged by him?" Answer: "It does."

"If you answer the foregoing issue No. 5 in the negative, you need not answer the succeeding one; but, if you answer same in the affirmative, then state, in answer to

"Special Issue No. 6: What sum of money, if paid in hand at this time, would be fair and adequate compensation to plaintiff for the annoyance, inconvenience, or discomfort caused him or his family by said hog ranch (if same has been shown)?" Answer: "$1,000."

The following charges were requested by defendants and given by the court:

"You are instructed that, in determining whether or not defendants' business constitutes a nuisance as to plaintiff, you will consider the extent of hurt, inconvenience, or damage, if any, which you may find from the evidence has been suffered by plaintiffs on account of such business, if you find that any such hurt, inconvenience, or damage has been so suffered; and in this connection you are instructed that, in order to constitute such business a nuisance, it is not sufficient that the operation of said business be merely annoying or disagreeable; but, in order to constitute such hog ranch a nuisance, the hurt, inconvenience, or damage occasioned thereby, if any, must be such as would be likely to cause some material physical discomfort to a person of ordinary sensibilities circumstanced as were plaintiff and his family."

"If, on account of the nature of your replies to other issues, you are required by the charge of the court to find what sum of money, if paid at this time, would be a fair and adequate compensation to plaintiff for annoyance, inconvenience, or discomfort caused him by the hog ranch, you will not take into consideration any question of possible future annoyance, inconvenience, or discomfort, but will confine your estimate solely to the actual, material, physical annoyance, inconvenience, and discomfort heretofore actually suffered."

Upon the answers of the jury to the issues submitted the court rendered judgment:

First, that the injunction prayed for by plaintiff be denied, and that he pay all costs incurred by reason of his application for same; second, that by reason of the fact that the nuisance found by the jury to exist is only temporary, plaintiff shall take nothing for depreciation of the value of his property; and, third, "that plaintiff, W. T. Strange, do have and recover of and from defendants, jointly and severally, the sum of $1,000, with 6 per cent.

interest per annum thereon from date of judgment, and for all costs not adjudged to plaintiff."

From such judgment defendants have appealed.

[1] By the first and second assignments it is in substance insisted:

That the court erred in defining the word "nuisance" as "anything that works hurt, inconvenience, or damage to another, either in his person or his property," and in not giving in lieu thereof charge No. 2, requested by appellant, as follows: "A nuisance, as that term is applicable to this case, is defined as an unreasonable, improper, or unwarrantable use by a person of his own property in such a way as to cause material damage, inconvenience or hurt to another"—in that the definition given by the court is vague and indefinite, and not properly applicable to the facts of this case, for the reason that under such charge the jury is permitted to find that the hog ranch was a nuisance if it caused any degree of hurt, inconvenience, or damage to plaintiff without regard to whether its operation constituted any violation of plaintiff's rights or not.

If the definition of the word "nuisance," as given by the court, quoted by appellant, stood alone, we would unhesitatingly hold, not only that giving such definition, as applicable to the facts of this case, was error, but that it would constitute reversible error; but such is not a fact, as, after defining the word "nuisance" as above indicated, the court further instructed the jury as follows:

"But in this connection you are further instructed that you will look to all the facts and circumstances in evidence to determine whether the manner in which the hog ranch was being operated by the defendants was such an 'unreasonable' use thereof as to cause injury, annoyance, or discomfort to the plaintiff or his family."

And at the request of defendants the court gave the following charge:

"You are instructed that, in determining whether or not defendants' business constitutes a nuisance as to plaintiff, you will consider the extent of hurt, inconvenience, or damage, if any, which you may find from the evidence has been suffered by plaintiffs on account of such business, if you find that any such hurt, inconvenience, or damage has been so suffered; and in this connection you are instructed that, in order to constitute such business a nuisance, it is not sufficient that the operation of said business be merely annoying or disagreeable, but, in order to constitute such hog ranch a nuisance, the hurt, inconvenience, or damage occasioned thereby, if any, must be such as would be likely to cause some material physical discomfort to a person of ordinary sensibilities circumstanced as were plaintiff and his family."

If the charge is read as a whole, in connection with the special charges given, it does not, we think, present reversible error. We therefore overrule the first and second assignments.

[2] We also overrule the third and fourth assignments, as we think those parts of the charge of the court complained of by such assignments are rendered harmless by reason of the giving of the special charge requested by defendants, set out herein under the discussion of assignments 1 and 2.

[3, 4] By the fifth assignment it is insisted that the court erred in not instructing the jury, at the request of defendants, as follows:

"The proper use of property in the prosecution of a lawful business does not constitute a nuisance, unless such use be under the circumstances an unreasonable one; and in determining the reasonableness or unreasonableness of such use it is proper for the jury to take into consideration, if shown, the locality in which the business is carried on, the suitableness or unsuitableness of such locality for the particular business, the nature of the business and the manner in which it is conducted, the extent of the objectionable features complained of, if any, and all the surrounding circumstances."

If no charge had been given in which the substance of the requested charge was embraced, we would feel constrained to sustain the assignment. The property of appellant, situated in the country, as it was, and used in a proper manner as a hog ranch, was not per se a nuisance; to become a nuisance, it must be used in such manner as to materially interfere with a person of ordinary sensibilities in his enjoyment of his property; it is not sufficient that it only inconvenience such other person, or that it to some extent works hurt or annoyance to him. Some disagreeable odors and noises are generally created from the ordinary use of premises for a hog ranch, and while these may sometimes be annoying to neighbors, such annoyance is part of the price paid for living where there are neighbors. It is only when such odors and noises are so unusual and excessive as to materially interfere with the ordinary enjoyment of the properties of those living in the neighborhood that such hog ranch becomes a nuisance. The courts will take judicial notice of the fact that in inhabited districts some injury must result to neighbors from the raising and slaughtering of hogs; but this fact alone will not make the raiser and slaughterer of hogs liable to his neighbor for trifling damages caused thereby. It hardly admits of doubt that, in determining the question of whether a business or industry conducted in the country is a nuisance as a matter of fact, the locality and surroundings are of the first importance, and in the trial of a case involving such issue the court should so instruct the jury, when requested so to do by a party being sued. But we do not think the refusal of the requested charge constitutes reversible error, if error at all, in view of the fact that, after defining the word "nuisance," the court, immediately following such definition, instructed the jury as follows:

"But in this connection you are further instructed that *you will look to all the facts and*

*circumstances in evidence to determine whether the manner in which the hog ranch was being operated by defendants was such an unreasonable use thereof as to cause injury, annoyance, or discomfort to plaintiff or his family."* (Italics ours.)

The court also gave the charge requested by appellants, already set out herein. We think these charges, given by the court, substantially and sufficiently cover and submit the matter embraced in the refused charge, and therefore the refusal to give the requested charge does not constitute reversible error.

We overrule the sixth assignment, as we think the special charge No. 10 requested by defendants, the refusal to give which complaint is here made, was substantially covered by the charges given.

[5] The court defined the word "unreasonable," as used in his charge, as being "something unnecessary and out of the usual and ordinary way of conducting or operating said business." By their seventh and eleventh assignments appellants insist that in so defining such word the court committed reversible error. They contend that the effect of the charge defining "unreasonable," when read in connection with the definition of the word "nuisance," was to give, in effect, an instruction that, if they believed defendants conducted their hog ranch in an unnecessary manner or in a way unusual, such business would be a nuisance. That one may conduct any kind of legitimate business upon his premises in an unnecessary or unusual manner, without necessarily constituting it a nuisance, we have no doubt. The effect of that part of the charge now being discussed, if standing alone, and not read in connection with the paragraph just preceding it, and the charge given at the request of appellants, was to instruct the jury that to use one's property in an unnecessary or unusual manner was an unreasonable use thereof, and that if in such use of such property the business conducted thereon worked hurt, inconvenience, or damage to another, to any extent, such business was a nuisance. But when this definition is considered in connection with other portions of the main charge, and with the charge requested by appellants and given by the court, we are unable to see how appellants could have been injured by the charge as a whole, and we do not think that any jury of ordinary intelligence could have been misled thereby to the injury of appellants. We therefore overrule the assignments.

What has already been said disposes of assignments 8, 9, and 10, and therefore they will not be further discussed.

[6] Appellants in proper time and manner requested the court to give the following special charges:

"Defendant's business will not be considered a nuisance as to plaintiff on account of the odors, if any, occurring in connection therewith, unless such odors and the incidents thereof are of such volume, quantity, and extent as would be likely to cause some acute, material, physical discomfort to a person of ordinary sensibilities, circumstanced as were the plaintiff and his family, and it is not sufficient in this connection that it be merely disagreeable or undesirable; and unless you find that such odors do emanate from such hog ranch as alleged, and further find that such odors, if any, and the incidents thereof, are such as would likely cause some acute, material, physical discomfort to a person of ordinary sensibilities, circumstanced as were the plaintiff and his family, then you will find that said hog ranch does not constitute a nuisance on account of any odors emanating therefrom."

"Defendant's business will not be declared a nuisance as to plaintiff on account of the noise, if any, occurring in connection therewith, unless such noise and the incidents thereof are of such volume, quantity, and extent as would be likely to cause some acute, material, physical discomfort to a person of ordinary sensibilities, circumstanced as were the plaintiff and his family, and it is not sufficient in this connection that it be merely disagreeable or undesirable; and unless you find that such noises exist as alleged, and you further find that such noises and the incidents thereof are such as would likely cause some acute, material, physical discomfort to a person of ordinary sensibilities, circumstanced as were the plaintiff and his family, then you will find that said hog ranch was not a nuisance on account of any noises emanating therefrom."

"You are instructed that, in determining whether or not defendants' business constitutes a nuisance as to plaintiff, you will consider the extent of hurt, inconvenience, or damage, if any, which you may find from the evidence has been suffered by plaintiffs on account of such business, if you find that any such hurt, inconvenience, or damage has been so suffered; and in this connection you are instructed that, in order to constitute such business a nuisance, it is not sufficient that the operation of said business be merely annoying or disagreeable; but, in order to constitute such hog ranch a nuisance, the hurt, inconvenience, or damage occasioned thereby, if any, must be such as would be likely to cause some material physical discomfort to a person of ordinary sensibilities, circumstanced as were plaintiff and his family."

The court refused to give such charges, and appellants have made such refusal the ground for their twelfth, thirteenth, and fourteenth assignments. While we think these charges might have been properly given, if no charge containing their substance was given, we also think that their substance was substantially given in the main charge and the charges requested by appellants, and given by the court, both of which are set out herein, and therefore no injury was done appellant by the refusal of the court to give the charges requested.

[7] By the fifteenth, sixteenth, and seventeenth assignments it is insisted, in various forms, that the court erred in submitting to the jury special issue No. 6, reading as follows:

"What sum of money, if paid in hand at this time, would be fair and adequate compensation to plaintiff for the annoyance, inconvenience, or discomfort caused him or his family by said hog ranch (if any he has shown)?"

First, for the reason that plaintiff was not entitled to recover for inconvenience, annoyance, and discomfort suffered by his family; second, for the reason that under the pleadings of plaintiff he could not recover for damages suffered by his wife, he not having sued in her behalf; and, third, because plaintiff could not recover for damages to his children, he not having sued for any sum in their behalf.

We do not understand, from the special issue No. 6 submitted by the court, that the court submitted the question as to what damages were suffered by either his wife or the children. The only issue hereby submitted is as to the damages suffered by plaintiff individually as a consequence of the inconvenience, annoyance, or discomfort of himself or his family as a whole. It was the duty of the plaintiff to provide a home for his wife and children, as well as for himself, and if, by reason of a nuisance created by appellants near his home, his wife and children were inconvenienced, annoyed, or discomforted to such an extent as to make it necessary for the maintenance of their health and comfort to abandon his home, he would not be restricted to a recovery for such personal physical discomforts as he suffered; but he might also recover for such damages as he suffered by reason of the fact that his family were driven from his home by reason of said nuisance.

In Daniels v. Ft. W. R. G. Ry. Co., 96 Tex. 327, 72 S. W. 578, it is said by our Supreme Court that—

"If the plaintiff was entitled to recover upon the evidence, the right of recovery is not limited to the depreciation in the value of the property; but he may recover damages for the discomfort of himself and family in the use of the home caused by the erection and use of the coal hoist"—citing B. & P. Ry. Co. v. Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739; Randolf v. Bloomfield. 77 Iowa, 52, 41 N. W. 562, 14 Am. St. Rep. 268; I. C. Ry. Co. v. Grabill, 50 Ill. 241; Pierce v. Wagner, 29 Minn. 355, 13 N. W. 170, and other cases.

See, also, Haskell v. Hartrick, 135 S. W. 1057, Am. & Eng. Ency. of Law, vol. 21, p. 729, wherein the rule is thus stated:

"In fixing the damages the jury may take into consideration, if proved, other injurious consequences than depreciation of the value or rental value of the property affected by the nuisance. Thus, in an action by the occupant of a dwelling, injury to the health of himself and family and the impairment of their comfortable use and enjoyment of their dwelling may be considered, when these are the direct results of the nuisance."

By the nineteenth and last assignment it is insisted that the judgment for $1,000 rendered against appellant is excessive. Before this court can find that the amount awarded is excessive, we must find that it is so large as to indicate that its award was the result of passion, prejudice, or corruption, or that the evidence has been disregarded by the jury. This we are unable to do from the evidence. In R. C. L. vol. 8, § 215, p. 673, this rule is announced:

"In actions sounding in damages merely, where the law furnishes no legal rule for measuring them, the amount to be awarded rests largely in the discretion of the jury; and, unless so large as to indicate that it was the result of passion, prejudice, or corruption, or that the evidence has been disregarded, their verdict is conclusive, and will not be set aside as excessive, either by the trial court or on appeal. Full compensation is impossible in the abstract, and different individuals will vary in their estimate of the sum which will be just pecuniary compensation, and so all that the court can do is to see that the jury approximates a sane estimate, or, as it is sometimes said, that the results attained do not shock the judicial conscience. The courts will, of course, interfere with the verdicts of juries when it is manifest that they are the result of corruption, prejudice, or passion; and so it is the province of the court to set a verdict aside where it clearly appears to be excessive, or where the jury in rendering it appears to have disregarded the testimony. The amount awarded must bear some reasonable proportion to the injury sustained. However, since it is for the jury and not for the court to fix the amount, a verdict will not be set aside merely because it is large, or because the reviewing court would have awarded less."

And in Tel. Co. v. Hobart, 89 Miss. 252, 42 South. 349, it is said:

"The damage sustained by the loss of a telephone in its very nature is largely composed of inconvenience and annoyance. That a person deprived of the use of a telephone is materially damaged, all will concede. What is the amount of damage in dollars and cents cannot be accurately stated by the party suing, for the reason that his damage consists, not only in pecuniary losses, but it consists in inconvenience, discomfort, and annoyance, and it must be left to the jury to determine what is the damage sustained, taking into consideration the discomfort, the annoyance, and inconvenience suffered, together with actual pecuniary losses."

Having reached the conclusion that no such error has been committed in the trial of the cause as should cause a reversal of the judgment rendered, such judgment is affirmed.

Affirmed.