**MANCHESTER TERMINAL CORPORATION, Appellant,**

v.

**TEXAS TX TX MARINE TRANSPORTATION, INC., Atlantic Richfield Company d/b/a Lyondell Petrochemical, and Port of Houston Authority, Appellees.**

No. 01–88–00666–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 26, 1989.

Rehearing Denied Nov. 30, 1989.

Jesse P. Luton, Jr., Charles G. King, James P. Pennington, and Louis K. Bonham, Scott, Douglass & Luton, Houston, for appellant.

Arthur E. Murphy, Benjamin L. Hall, III, Vinson & Elkins, Pamela M. Giblin, Marc O. Knisely, McGinnis, Lochridge & Kilgore, and Mary Ellen Blade, Benckenstein, Oxford, Radfrod & Johnson, Houston, for appellees.

Before EVANS, C.J., and DUNN and MIRABAL, JJ.

## OPINION

EVANS, Chief Justice.

Manchester Terminal Corporation (Manchester) appeals from an order of the trial court granting a plea of abatement and dismissing Manchester's cause of action for lack of subject matter jurisdiction. Manchester, the owner and operator of a marine terminal storage facility on the Houston Ship Channel, initiated this action against appellees, Texas TX TX Marine Transportation, Inc. (Texas Marine), the operator of a petroleum coke facility, Atlantic Richfield Company d/b/a Lyondell Petrochemical Company (Lyondell), the owner and operator of a petroleum coke refinery, and the Port of Houston Authority (Port of Houston), the owner of the land on which the petroleum coke facility is located.

Manchester alleged that the activities of Texas Marine and Lyondell in transporting and storing petroleum coke on the Port of Houston property generated large amounts of petroleum coke dust, which settled on Manchester's property and contaminated its facilities and stored goods. Manchester alleged that this pollution significantly impaired its ability to solicit and accept goods for storage, resulting in substantial economic injury and posing a significant health hazard to its employees and the employees of other companies working at its terminal. Manchester characterized these actions as constituting trespass and nuisance, and asserted that they violated Tex. Const. art. I, sec. 17. Manchester sought a permanent injunction to prevent the transportation and storage of petroleum coke at the Texas Marine facility, as well as more than $12.5 million in damages.

Texas Marine and Lyondell filed a plea to the jurisdiction and a plea in abatement, in which they asserted that Manchester's cause of action was already the subject of proceedings before the Texas Air Control Board (TACB); that Manchester had already filed complaints with and requested hearings from the TACB; that the TACB had authorized the storage of petroleum coke; that the TACB had exclusive authority to regulate, investigate, and conduct administrative hearings on the matter; and that the law provided for an administrative proceeding before the TACB with an appellate process to the district courts of Travis County, Texas. Thus, Texas Marine and Lyondell contended that the administrative and appellate proceedings of the TACB preempted the subject matter jurisdiction of the trial court, and alternatively, that because Manchester had failed to exhaust its administrative remedies, the suit should be abated. The Port of Houston did not join in the pleas of Texas Marine and Lyondell, nor did it file a separate plea of abatement or challenge to the trial court's subject matter jurisdiction.

Manchester filed a response to these pleas, asserting that the legislature had not given the TACB exclusive jurisdiction over trespass and nuisance cases involving air pollution; that the trial court had primary jurisdiction over the subject matter; that Tex.Rev.Civ.Stat.Ann. art. 4477–5, sec. 1.06 (Vernon 1976),[1] of the Texas Clean Air Act, explicitly recognizes the right of private persons to bring common-law actions to

1. Effective September 1, 1989, the Texas Clean Air Act, Tex.Rev.Civ.Stat.Ann. art. 4477–5, secs. 1.01–6.01 (Vernon 1976 & Supp.1989), was recodified as Tex.Health & Safety Code Ann. secs. 382.001–382.115, by ch. 678, 1989 Tex.Gen.Laws 2230. (*See* Vernon's Texas Session Law Service 1989, No. 7 at 2717). In this opinion, we will cite to the old statute.

abate or recover damages for nuisances or conditions of air pollution; and that the legislative intent was that the TACB and the trial courts should have collateral adjudicatory powers. Regarding the doctrine of exhaustion of administrative remedies, Manchester argued that the applicable legislation did not require that it resort to TACB administrative remedies before initiating an action on the theories of trespass or nuisance; that its suit was a separate and distinct action, pursued as an independent remedy; and that it was not seeking to interrupt any administrative proceedings. It also asserted its entitlement to judicial adjudication of its constitutional claims, notwithstanding any legislative pronouncements to the contrary.

In Manchester's first three points of error, it asserts that the trial court erred in abating and dismissing its cause of action because (1) the Texas Clean Air Act explicitly recognizes the right of private persons to bring common-law actions to abate or recover for nuisances or conditions of pollution (Tex.Rev.Civ.Stat.Ann. art. 4477–5, sec. 1.06); (2) Manchester's cause of action based on trespass and nuisance raises questions that are inherently judicial in nature, and the doctrine of primary jurisdiction does not divest courts of jurisdiction over inherently judicial questions; and (3) Manchester seeks relief beyond the scope of the TACB's powers, and the doctrine of primary jurisdiction does not apply when the administrative agency is powerless to grant the relief sought.

We sustain these points of error.

■ The theory of primary jurisdiction states that when the legislature has delegated power to an administrative body to regulate a particular industry or business, the courts will not interfere until the administrative body has had an opportunity to pass upon and remedy the situation. *Gregg v. Delhi–Taylor Oil Corp.*, 162 Tex. 26, 29–30, 344 S.W.2d 411, 413 (1961). This theory is based on the premise that administrative bodies are staffed with experts trained to handle complex industrial problems, and that the public will benefit by having such agencies develop and enforce uniform laws, rules, and regulations. The doctrine of primary jurisdiction does not apply when the issues are "inherently judicial," unless the legislature has explicitly granted exclusive jurisdiction to the administrative body. *See Gregg*, 162 Tex. at 33, 344 S.W.2d at 415; *see also Houston Compressed Steel Corp. v. State*, 456 S.W.2d 768, 772 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ).

■ The Texas Clean Air Act (the Act) was enacted to "safeguard the air resources of the State from pollution by controlling or abating air pollution or emissions of air contaminants, consistent with the protection of health, general welfare and physical property of the people, including the aesthetic enjoyment of the air resources by the people and the maintenance of adequate visibility." Tex.Rev.Civ.Stat. Ann. art. 4477–5, sec. 1.02 (Vernon Supp. 1989). The Act provides that its provisions are to be vigorously enforced. *Id.*

The Act designates the TACB as the State's "air pollution control agency," and gives the TACB "principal authority" in matters relating to the quality of air resources in the state. The Act authorizes the TACB to set standards, criteria, levels, and emission limits for air content and pollution control, and to issue and monitor construction permits for facilities that may emit air contaminants. Tex.Rev.Civ.Stat. Ann. art. 4477–5, secs. 1.05, 3.27–3.272 (Vernon 1976 & Supp.1989). The Act prohibits the emission of any air contaminant or the performance of any activity that causes or contributes to a condition of air pollution, except as authorized by a TACB rule or order, and authorizes the TACB to enforce the provisions of the Act by injunction, administrative penalty, or other legal remedy. Tex.Rev.Civ.Stat.Ann. art. 4477–5, secs. 4.02–4.042 (Vernon 1976 & Supp. 1989).

Although section 1.05 of the Act names the TACB as the "principal authority" in the state on matters relating to the quality of the state's air resources, the Act does not explicitly give the TACB exclusive jurisdiction over all actions for injunctive relief or for damages caused by air pollution.

To the contrary, the very next section of the Act, section 1.06, expressly provides:

Effect on Private Remedies

*Sec. 1.06.* Nothing in this Act affects the right of any private person to pursue all common law remedies available to abate a condition of pollution or other nuisance or recover damages therefor, or both.

Section 1.06, which has been a part of the Act since its inception, clearly and directly expresses the legislature's intent to preserve *the right of any private person to pursue all common-law remedies available to abate a condition of pollution or other nuisance, or to recover damages therefor or both.* Manchester's pleadings allege both trespass and nuisance, which are well-recognized common-law remedies to abate or recover damages for pollution.

Although the Act does authorize the TACB to issue permits for the emission of pollutants within specified permissible limits, the Act does not give the TACB express authority to allow commercial enterprises to engage in activities, which, under the common-law, constitute trespass or nuisance. *See Venuto v. Owens–Corning Fiberglas Corp.,* 22 Cal.App.3d 116, 99 Cal. Rptr. 350 (1971). Even if a commercial enterprise holds a valid statutory permit to conduct a particular business, the manner in which it performs the activity may give rise to an action for injunctive relief or damages. *Id.*

Here, Manchester seeks injunctive relief and damages based on theories of trespass and nuisance, both of which have been held to be inherently judicial in nature. *Gregg,* 162 Tex. at 33, 344 S.W.2d at 415 (trespass); *City of Houston v. Lurie,* 148 Tex. 391, 395, 224 S.W.2d 871, 875 (1949) (nuisance); *Crossman v. City of Galveston,* 112 Tex. 303, 311, 247 S.W. 810, 813 (1923) (nuisance); *City of Waco v. Roddey,* 613 S.W.2d 360, 366 (Tex.App.—Waco 1981, writ dism'd w.o.j.) (trespass). Indeed, whether a particular condition constitutes a nuisance, and if so, the nature and extent of an appropriate remedy, is a determination historically considered a judicial func-

tion. *See State ex rel. Shevin v. Tampa Elec. Co.,* 291 So.2d 45 (Fla.Dist.Ct.App. 1974).

Texas Marine and Lyondell argue, in effect, that when the TACB has issued a permit authorizing a business to emit air contaminants at certain specified levels, the courts may not abate that business activity, even though its operation constitutes a common-law nuisance. They argue that, because the TACB has been given "exclusive original jurisdiction" to decide if a given emission level will cause significant air pollution, once the TACB has made that decision and issued a permit, the courts have no jurisdiction over the matter. In support of these arguments, they cite *State v. Associated Metals & Minerals Corp.,* 635 S.W.2d 407 (Tex.1982), and *Lloyd A. Fry Roofing Co. v. State,* 516 S.W.2d 430 (Tex.Civ.App.—Amarillo 1974, no writ).

In *Associated Metals,* the trial court entered a judgment modifying a TACB permit to allow the permit holder to emit air contaminants in excess of the levels specified in the permit. The Texas Supreme Court held the trial court lacked authority to modify the permit because the TACB had the sole authority to grant or deny construction permits and to set emission levels. The supreme court's decision in *Associated Metals* is not applicable here. In this case, Manchester does not challenge the TACB permit, nor does it seek to have the trial court make a determination regarding an acceptable level of emissions of air contaminants. Here, Manchester seeks only its common-law remedies of injunction and damages as expressly authorized by the Act.

In *Lloyd A. Fry Roofing Co.,* the Amarillo Court of Appeals held that a TACB "request," seeking to have Fry construct certain facilities, was not a "ruling, order, or decision, or similar act" of the TACB that would "exhaust [TACB's] primary administrative jurisdiction." Thus, the court of appeals decided that the trial court lacked jurisdiction to determine the feasibility of the proposed construction. *Lloyd A. Fry Roofing Co.,* 516 S.W.2d at

433. Therefore, that case is also distinguishable from the circumstances here.

■ Where an administrative agency has been granted legislative authority to grant full relief to an aggrieved party, the complaining party must ordinarily exhaust all available administrative remedies before seeking judicial relief. *Kettlewell v. Hot-Mix, Inc.,* 566 S.W.2d 663, 668 (Tex.Civ. App.—Houston [1st Dist.] 1978, no writ) (suit to enjoin operation of recently constructed asphalt plant based on assertions that the TACB had not given plaintiff an opportunity for a hearing before issuing a construction permit); *see also Kavanaugh v. Underwriters Life Ins. Co.,* 231 S.W.2d 753, 755–56 (Tex.Civ.App.—Waco 1950, writ ref'd). Such administrative action is not a prerequisite, however, when the administrative agency cannot grant full relief, and the agency has not been given express legislative authority to make incidental findings essential to the granting of such relief. *Foree v. Crown Central Petroleum Corp.,* 431 S.W.2d 312, 316 (Tex. 1968); *Lake Country Estates v. Toman,* 624 S.W.2d 677, 681 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.).

■ The issues raised by Manchester's pleading do not require the TACB's administrative expertise. Manchester does not challenge the validity of the TACB permit, and it seeks only judicial remedies based on common-law actions of trespass and nuisance. Therefore, the doctrine of primary jurisdiction is inapplicable, and Manchester was not required to pursue its administrative remedies as a prerequisite to the assertion of its common-law claims. *Foree,* 431 S.W.2d at 316; *Gregg,* 162 Tex. at 33, 344 S.W.2d at 415; *Texas Catastrophe Ins. Ass'n v. Miller,* 625 S.W.2d 343, 347 (Tex. App.—Houston [14th Dist.] 1981, writ dism'd w.o.j.).

Texas Marine and Lyondell also argue that a court decree granting injunctive relief to Manchester would, in effect, nullify and set aside the statutory permits issued by the TACB. We disagree. Although Texas Marine may hold a valid permit from the TACB authorizing the emission of specified amounts of pollutants into the air, neither the permit nor the underlying legislation gives Texas Marine the right to conduct its business in a manner which, under the law, constitutes a trespass or a nuisance. *See Venuto,* 99 Cal.Rptr. at 359.

■ It has long been the law in this state that proof of negligence is not essential to imposition of liability for creation or maintenance of a nuisance. A nuisance does not rest on the degree of care used, but on the degree of danger or annoyance existing even with the best of care. *Columbian Carbon Co. v. Tholen,* 199 S.W.2d 825, 828 (Tex.Civ.App.—Galveston 1945, writ ref'd). When a commercial enterprise causes or permits the escape of noxious things such as smoke, soot, or odor, so as to substantially impair the comfort or enjoyment of those occupying neighboring property, such activity may be judicially declared a nuisance, justifying equitable relief or an award of damages. *See Wales Trucking Co. v. Stallcup,* 474 S.W.2d 184, 186–87 (Tex.1971); *Economy Furniture, Inc. v. Jirasek,* 345 S.W.2d 951, 957 (Tex.Civ.App.—Austin 1961, writ ref'd n.r.e.) (ashes and dust); *Columbian Carbon Co.,* 199 S.W.2d at 825 (carbon black soot); *Temple v. Mitchell,* 180 S.W.2d 959, 961–62 (Tex.Civ.App.—Austin 1944, no writ) (noxious odors).

■ Unless a particular commercial enterprise constitutes a nuisance per se, courts are reluctant to enter an injunctive order that will absolutely prohibit the operation of a lawful business. *See Schiller v. Raley,* 405 S.W.2d 446, 447 (Tex.Civ.App.—Waco 1966, no writ). The courts will intervene, however, if a business is being conducted in such a manner as to constitute a nuisance to particular individuals. In such a case, a court, in the exercise of its equitable powers, may frame its decree to permit the continuation of the enterprise, and also protect the aggrieved individual against further loss. *See, e.g., Red Devil Club v. State,* 307 S.W.2d 627, 631 (Tex. Civ.App.—Amarillo 1957, no writ); *Newton v. Town of Highland Park,* 282 S.W.2d 266, 277 (Tex.Civ.App.—Dallas 1955, writ ref'd n.r.e.); *Kleising v. Miller,* 83 S.W.2d 732, 733 (Tex.Civ.App.—Galveston 1935, no writ); *Boren v. Magnolia Petroleum Co.,* 266 S.W. 623, 624 (Tex.Civ.App.—Texarkana 1924, no writ).

Under the pleading in this case, it would be possible for the trial court to fashion a decree that would allow Texas Marine to continue its business operations under the TACB permit, and at the same time, require that Texas Marine refrain from operating its business in a manner that would cause further loss or damage to Manchester. The trial court could also award damages to Manchester without adversely affecting Texas Marine's ability to conduct its lawful business operations pursuant to the TACB permit. We therefore overrule the contentions that any relief granted to Manchester under its pleadings would have the effect of nullifying the permit issued by the TACB. We also overrule the argument advanced by the Port of Houston that Manchester's lawsuit constitutes a collateral attack on the TACB permit. Manchester's claims are based on trespass and nuisance. Manchester does not challenge the TACB permit or the emission levels established therein. *See Dorchester Gas Producing Co. v. Harlow Corp.*, 743 S.W.2d 243, 251–52 (Tex.App.—Amarillo 1987, writ denied). Manchester pursues its common-law remedies as it is entitled to do under section 1.06 of the Act.

In view of our disposition of Manchester's first three points of error, we do not consider Manchester's claim that its petition states a cause of action under article I, section 17 of the Texas Constitution. Neither do we discuss appellant's remaining points of error challenging the sufficiency of the evidence and complaining of other trial matters that are not essential to the disposition of the appeal. Because the Port of Houston did not file a motion to dismiss or for abatement in the trial court, we do not consider its counterpoints asserting that it is not responsible for the acts of nuisance or trespass of its tenant.

The order of the trial court is reversed and the cause remanded for further proceedings.